## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA (OCALA)

| | |
|---|---|
| **FLOYD STEVE BALES, individually and on behalf of all others similarly situated,** | **CASE NO.: 5:21-CV-00496-MMH-PRL** |
| **Plaintiff,** | |
| **vs.** | |
| **BRIGHT SOLAR MARKETING LLC,** | |
| **Defendant.** | |

### DEFENDANT BRIGHT SOLAR MARKETING'S LLC'S OBJECTIONS TO AND APPEAL OF MAGISTRATE'S ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL

Defendant, Bright Solar Marketing LLC ("BSM"), respectfully objects to and appeals the order of the Magistrate Judge granting the Motion to Compel filed by Plaintiff, Floyd Steve Bales. The Motion to Compel should have been denied as untimely, as it was filed *seven months* after BSM served its discovery responses. Regardless, the Magistrate erred in granting the Motion to Compel on its merits.

### RELEVANT BACKGROUND

### I.   CASE SCHEDULE AND DEADLINES

Plaintiff filed this proposed class action under the Florida Telephone Solicitation Act ("FTSA") on August 26, 2021, in a Florida State Court. (D.E. 1-1.) BSM removed the case to this Court on October 1, 2021. (D.E. 1.) Roughly a month

later, the Court entered its Case Management and Scheduling Order ("CMSO"), granting the parties, in essence, a full year for discovery, setting a discovery deadline of October 28, 2022. (D.E. 15 at 1.) Dispositive and *Daubert* motions are due by January 20, 2023. (*Id.*)

## II.    THE DOCUMENT REQUESTS AT ISSUE

Plaintiff's untimely motion concerned two document requests ("RFPDs") that were served on January 6, 2022. BSM served its responses to the RFPDs on February 21, 2022. (D.E. 16-1 at 18.) As Plaintiff has admitted, BSM has "produced thousands of pages of documents" in the case. (D.E. 16 at 3.) Specifically, Plaintiff's motion concerned two requests, only one of which – Request for Production #24 ("RFPD #24") – BSM is appealing.[1] The text of, and BSM's response to, RFPD #24 stated:

> To the extent Defendant asserts that Defendant obtained consent or permission to contact Plaintiff or putative class members based on a visit to a website, produce documents that identify those website(s)

---

[1] The other request that was the subject of the Motion to Compel was RFPD #24, which requested "call records" for the putative class members. The Magistrate ordered production of those records. (D.E. 29 at 7.) In an effort to keep the case moving despite Plaintiff's delay in litigating it, BSM has produced the call records notwithstanding Plaintiff's complete untimeliness in moving to compel production of those records. Nevertheless, that part of the ruling almost certainly would have been reversed had BSM chosen to challenge it. Courts, including in this District, routinely reject pre-certification efforts to obtain putative class member identities. *See, e.g., Tiger v. Dynamic Sports Nutrition, LLC*, 2016 WL 1408098, *5 (M.D. Fla. Apr. 11, 2016) ("The Court agrees with Defendants that request 22 [seeking names and addresses of putative class members] is a premature attempt to obtain information that is not relevant unless the Court grants class certification."); *see also Hankinson v. R.T.G. Furniture Corp.*, 2016 WL 1182768, *3 (S.D. Fla. Mar. 28, 2016) ("[T]he names and addresses of the [putative class members] would add nothing to the argument for class certification."); *Levine v. Gunther Motor Co., Inc.*, 2010 WL 5140590, *3 (S.D. Fla. Dec. 9, 2010) (same). The Magistrate's effort to distinguish those rulings because they supposedly involved plaintiffs' counsel advertising for more plaintiffs simply does not withstand scrutiny under a fair reading of *Tiger*, *Hankinson*, and *Levine*.

and the specific page(s) on those website(s) that you claim constitute consent or permission.

> **ANSWER: Subject to and without waiving its objections, BSM will produce non-privileged documents, if any, responsive to this Request.**

(*Id.* at 16 (bold face original).) It is undisputed that BSM subsequently produced documents pertaining to Plaintiff's consent to be called by BSM. Plaintiff, however, seeks "consent records" for *every putative class member* (a number far exceeding 100,000) and the Magistrate erroneously ordered their production.

## ARGUMENT

With regard to objections to a non-dispositive order, the Court has described the governing law and standards as follows:

> Rule 72(a), Federal Rules of Civil Procedure, permits a party to object to a magistrate judge's order on a non-dispositive, pre-trial matter within fourteen days after service of the order. Rule 72(a) requires, upon consideration of a timely objection, an order modifying or vacating a magistrate judge's order to the extent that the order "is clearly erroneous or is contrary to law." "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). "An order is contrary to law 'when it fails to apply or misapplies relevant statutes, case law or rules of procedure.' " *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F.Supp.2d 70, 74 (N.D.N.Y.2000).

*S.E.C. v. Kramer*, 778 F. Supp. 2d 1320, 1326-27 (M.D. Fla. 2011)   Here, the Magistrate clearly erred in compelling production of consent records for two reasons: (1) the motion to compel as directed to the consent records was untimely;

and (2) regardless of untimeliness, the Magistrate's order of production was clearly erroneous and contrary to the law.

## I.   THE MOTION TO COMPEL, FILED SEVEN MONTHS AFTER BSM SERVED ITS WRITTEN RESPONSES TO THE RFPDs, WAS UNTIMELY AND SHOULD HAVE BEEN DENIED ON THAT BASIS.

First, Plaintiff filed his motion *a full seven months after BSM served its written responses to the RFPDs*. Such obvious delay and untimeliness should have mandated denial of the motion. The Magistrate erred in ruling the motion was timely.

### A. Facts Concerning Plaintiff's Unnecessary Delay

BSM served its responses to Plaintiff's RFPDs on February 21, 2022. (D.E. 16-1 at 18.) Because of the sensitive, private nature of the information sought, BSM made it clear that it would "produce responsive documents only upon the entry of a mutually agreeable protective order." (D.E. 16-1 at 3.)[2] Notwithstanding that understandable condition,  Plaintiff delayed until April 12 – roughly 50 days later – even to contact BSM to seek a meet and confer. (D.E. 19-1.) Not until May 18, 2022 – three months after BSM had served the RFPD Responses – was a protective order finally put into place. (D.E. 16 at 15.) BSM then produced documents concerning Plaintiff's consent to the calls he now complains about.

Plaintiff, however, wanted such documents as to the entire putative class, to

---

[2] Plaintiff's Motion to Compel asserted that BSM "stated that documents would not be produced until a protective order was in place" on "April 18, 2022." (D.E. 16 at 15.) In fact, BSM had stated its position nearly two months before the April 18 communication Plaintiff disingenuously relied on in his motion. (*See, e.g.*, D.E. 19-2.)

which BSM justifiably objected. Finally, on July 21, 2022, Plaintiff's counsel declared an impasse over RFPD #24. (*See* D.E. 19-3.) Yet, Plaintiff still waited another two full months, until September 22, to file the present motion – a *total of 212 days* after receiving BSM's discovery responses on February 21, a full seven months earlier.[3]

In sum, BSM served its discovery responses on February 21, and Plaintiff filed his Motion to Compel seven months later. There can be no question that Plaintiff's motion to compel is untimely.

### B. Under This District's Caselaw, Plaintiff's Motion to Compel Should Have Been Denied As Untimely.

#### 1. Courts in This District Consistently Have Denied Motions to Compel As Untimely Where, as Here, the Movant Unnecessarily Delayed Filing the Motion.

The law is well settled in this District: "While there is no local or federal rule setting a precise deadline for the filing of a motion to compel, it is clear that any such motion must be filed within a 'reasonable' time period." *Coleman v. Starbucks*, 2015 WL 2449585, *8 (M.D. Fla. May 22, 2015) (quotations omitted); *accord*, *Tillman v. Ally Financial Inc.*, 2017 WL 5187748, *4 (M.D. Fla. Nov. 9, 2017);

---

[3] The Magistrate asserted that the Motion was timely because "on August 23rd, Defendant confirmed that it and Plaintiff were at an impasse, as it was abstaining from producing consent records for the class." (D.E. 29-9 at 3.) Actually, Plaintiff declared an impasse over a month earlier, on July 21, responding to BSM's explanation for compliance with RFPD #24 by declaring, "so then we are at impasse." (D.E. 19-3.) In a best-case scenario for Plaintiff, he waited another 60 days after his own counsel declared an impasse to file the Motion. The Magistrate misread the critical dates in making its erroneous ruling on timeliness.

*Goers v. L.A. Enter. Group, Inc.*, 2017 WL 2578649, *3 (M.D. Fla. June 14, 2017);

*Galle v. Nationstar Mortg., LLC*, 2017 WL 2559634, *4 (M.D. Fla. June 13, 2017).

In this regard, "waiver principles apply in the discovery context just as they

do in other aspects of litigation." *Coleman*, 2015 WL 2449585, *8; *see also U.S. v.

Stinson*, 2016 WL 8488241, *5 (M.D. Fla. Nov. 22, 2016) (defendant "waived his

motion for sanctions" by failing to bring issue to Court in timely manner); *Goers*,

2017 WL 2578649, *3 ("By virtue of failing to address a discovery violation when

the movant first learns of the issue, a party risks waiving the issue."). Plaintiff waived

the right to file a motion to compel concerning RFPD #24.

Waiver aside, the Motion to Compel should have been denied as untimely.

Indeed, "Courts in this district repeatedly have denied motions to compel when a

moving party did not move to compel within a reasonable time period." *Tillman*,

2017 WL 5187748, *4; *accord*, *SOS Furniture Co., Inc. v. Salem*, 2019 WL

12536568, *2 (M.D. Fla. Dec. 11, 2019) ("[C]ourts in this Circuit routinely deny

discovery motions (whether they seek to compel or protect against certain discovery

or seek sanctions for alleged discovery abuses) *that could have been filed months in

advance* or are filed after the close of discovery.") (emphasis added). Plaintiff's

untimely Motion to Compel fell squarely within that principle.

Moreover, many of those cases involved timeframes between receipt of

discovery responses and filing of motion to compel shorter than the seven months at

issue here. *See, e.g., Galle*, 2017 WL 2559634, *3 (motion denied where "[a]fter receiving Defendant's objections . . . Plaintiff waited five months to bring her discovery concerns before the Court"); *Coleman*, 2015 WL 2449585, *8 (motion denied as untimely when filed six months after service of discovery requests); *SE Mechanical Services, Inc. v. Brody*, 2009 WL 997268, *3 (M.D. Fla. Apr. 14, 2009) (motion denied as untimely where filed three months after deposition that gave rise to motion);[4] *Pushko v. Klebener*, 2007 WL 2671263, *2 (M.D. Fla. Sept. 7, 2007) (denying motion to compel where document requests were "objected to on December 15, 2006," and plaintiffs "offer no explanation as to why they then allowed four months to lapse before bringing a motion to compel"); *see also Wright v. Dyck-O'neal, Inc.*, 2016 WL 3912050, *4 (M.D. Fla. June 27, 2016) ("four (4) month delay in filing a motion to compel on disputed discovery matters [is] patently excessive"); *cf. Cureton v. Sunrise Sr. Living Svcs.*, 2014 WL 2091254, *1 (M.D. Fla. May 19, 2014) ("five-month delay between Defendant's service of its responses to Plaintiff's discovery requests on June 12, 2013, and the filing of Plaintiff's motion to compel on November 5, 2013, evinces a pattern of unnecessary delay").

Plaintiff's seven-month delay in filing the Motion to Compel was "patently

---

[4] The fact that Plaintiff waited so long to file the motion is, in itself, suggestive that the motion lacks merit. *See, e.g., Ellison v. Ford Motor Co.*, 2009 WL 10665409, *9 (N.D. Ga. July 22, 2009) ("Given the delay in filing the Motion to Compel, the Court is hard-pressed to believe that [movant's] counsel believed the discovery responses at issue were seriously deficient.").

excessive" (*Wright*, 2016 WL 3912050, *4). Consequently, his Motion to Compel should have been denied as untimely.

> **2.  Additionally, the Grant of the Untimely Motion to Compel, If Upheld, Will Necessitate an Extension of the Discovery Period and a Second Deposition of Plaintiff's Expert, and Will Add Unnecessary Expense to the Case.**

The fact of the delay, while sufficient to deny Plaintiff's motion, was only part of the problem. "When parties fail to raise discovery disputes with the court in a timely manner, those disputes can fester into serious case management problems." *Coleman*, 2015 WL 2449585, *8. And that undoubtedly will be the result of the Magistrate's granting Plaintiff's untimely motion in this case. The discovery deadline was October 28, 2022 (D.E. 15), meaning that Plaintiff filed this motion five weeks before the discovery deadline when he should have filed it months before that deadline. The date of these objections is six weeks after the discovery deadline.

Moreover, Plaintiff has claimed his expert "will perform an analysis of Bright Solar's call records to determine which telephone numbers satisfy the requirement for class membership." (D.E. 16 at 9.) If that's true, then it will be weeks, or even months, before discovery could be completed.[5] What is more, the expert has already submitted his report (D.E. 16-2), which required BSM to depose him within the

---

[5] Indeed, the expert report attached to the Motion to Compel (D.E. 16-2) promises that the expert "will do" this or "will create" that, making it a complete mystery why Plaintiff didn't move on these suddenly (allegedly) important issues months before he did.

discovery period.[6]  Plaintiff does not dispute that his expert will need to perform more work over the next several weeks – which, inevitably will necessitate a second deposition of the expert for no reason other than Plaintiff's months-long foot-dragging in filing the Motion to Compel, thereby creating entirely unnecessary expense for BSM because it will be entitled to submit a second rebuttal to Plaintiff's expert, likely leading to more depositions.[7]

These sorts of delays – which would require an extension of discovery if the Magistrate's ruling were upheld – further justify denial of the motion. *See, e.g.*, *Galle*, 2017 WL 2559634, *3 (denying motion: "[b]ecause of Plaintiff's unexplained delay in bringing her motions to compel, granting her motions would require extending the discovery deadline and possibly other CMSO deadlines including the deadline for dispositive motions . . ."); *Tillman*, 2017 WL 5187748, *4 (denying motion to compel where plaintiff delayed filing motion "without any explanation for the delay"); *Goers*, 2017 WL 2578649, *3 (motion denied where "Plaintiffs do not explain nor acknowledge the delay in their filing"); *Coleman*, 2015 WL 2449585, *8 (denying defendant's motion to compel as untimely: "At this point, Defendant knew, or at least should have known Plaintiff was not going to respond to its discovery requests absent an order compelling disclosure. Instead of promptly

---

[6] That deposition was taken on October 10, 2022.

[7] If these events do, in fact, occur, then BSM will move the Court to order Plaintiff to pay for the costs of a second deposition of their expert due to Plaintiff's unexplained delay.

moving for an order to compel, Defendant did nothing for two months, finally filing its motion on the eve of the discovery deadline."); *SE Mechanical*, 2009 WL 997268, *3 (delayed motion denied where movant had "ample opportunity to raise this dispute prior to the close if discovery," Court noting "the lack of a valid reason for the belated motion").

The bottom line is that Plaintiff's unexplained seven-month delay in filing the Motion to Compel should not have been rewarded by the Magistrate. The Motion to Compel should have been denied as untimely, and the Magistrate's ruling otherwise should be reversed.

## II.   BSM COMPLIED WITH THE "CONSENT RECORDS" REQUEST, AND THE MAGISTRATE CLEARLY ERRED IN COMPELLING PRODUCTION OF "CONSENT RECORDS" BASED ON AN ISSUE THE PARTIES DID NOT BRIEF.

As explained above, the Magistrate should not have addressed the merits of Plaintiff's Motion to Compel due to its clear untimeliness. Regardless, the Magistrate clearly erred in compelling production of the consent records, basing the ruling primarily on an issue the parties did not brief.

### A. As Plaintiff Admitted, BSM Produced Consent Records for Plaintiff, Which Complied with RFPD #24 as Drafted.

With regard to Plaintiff's request for "consent records," BSM complied with that request. RFPD #24 stated: "To the extent Defendant asserts that Defendant obtained consent or permission to contact Plaintiff *or* putative class members based

on a visit to a website, produce documents that identify those website(s) and the specific page(s) on those website(s) that you claim constitute consent or permission." (D.E. 16-1 at 16 (emphasis added). The request was phrased in the disjunctive – "Plaintiff *or* putative class members" – not in the conjunctive, which would have encompassed both Plaintiff ***and*** putative class members, and BSM made that clear to Plaintiff in the meet-and-confer process. Given the choice, BSM produced consent records for Plaintiff, as Plaintiff admitted in the motion. (*See* D.E. 16 at 3 ("Bright Solar has produced documents demonstrating that it purports to have obtained Plaintiff's consent to be called based upon a website visit.").) Therefore, BSM complied with RFPD #24 as written.

If RFPD #24 was worded in a way Plaintiff did not intend after he learned of BSM's position in the meet and confer in June (more than *four months* before the discovery deadline), then Plaintiff had plenty of time to draft and serve another request for production that would have clarified any confusion or ambiguity, but he failed to do so. The law is clear that there is no basis for the Court to bail him out at this late date.  Indeed, "[i]t is not the trial court's responsibility to redraft, rewrite or narrow a discovery request which on its face is … vague." *Primm v. Aerofil Technology, Inc.*, 2012 WL 13102523, n.4 (M.D. Fla. Mar. 13, 2012); *see also Kyles v. Health First, Inc.*, 2010 WL 11626712, n.2 (M.D. Fla. Sept. 27, 2010) (same). Because BSM complied with RFPD #24 as written, Plaintiff's Motion to Compel

directed at that request should have been denied.[8]

### B. RFPD #24, If Applied to the Putative Class, Would Be Overly Broad, Unduly Burdensome, and Disproportionate to the Needs of the Case.

As Plaintiff concedes, BSM produced 35 pages of documents relating solely to the consent it obtained to call Plaintiff. (D.E. 16 at 16.) If BSM is required to make the same production for every member of the putative class, and assuming Plaintiff's 35-page production is representative of the other putative class members, such a request would be out of any reasonable proportion to the needs of the case. That is why BSM did not make such an objection to RFPD #24 to begin with – it construed (grammatically correctly) the disjunctive phrase "Plaintiff or putative class members" to give it the choice of producing as to one or the other, and it chose Plaintiff as the less burdensome of the choices. There is no basis, legally or otherwise, to construe RFPD #24 as requiring both.

Moreover, while it is true that BSM bears the burden of proof of consent at trial, it is *Plaintiff's* burden to "advance a viable theory of generalized proof to identify those persons" who did not consent to receive calls. *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 329 (5th Cir. 2008). Plaintiff must also prove that he is typical of the class he seeks to represent. Fed. R. Civ. P. 23(a)(3). By seeking consent records for every putative class member, Plaintiff is practically conceding that he

---

[8] Moreover, any such consent documents would be in the possession of non-party High Roller Marketing, whom Plaintiff previously subpoenaed in this case.

cannot demonstrate typicality by his own, individual facts.

In other words, the whole point of a class action, particularly "the typicality requirement," is "simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Haight v. Bluestem Brands, Inc.*, 2015 WL 12830482, *7 (M.D. Fla. May 14, 2015) (quoting *Sprague v. GMC*, 133 F.3d 388, 399 (6th Cir. 1998)). In that context, it makes no sense to require BSM to produce records concerning the entire putative class before a motion for class certification has even been filed, let alone granted. If Plaintiff is adequate to represent a class and can present claims and facts typical of those he seeks to represent, he should not need "consent records" for thousands of other individuals. The Magistrate clearly erred in requiring BSM to produce documents concerning thousands of individuals who are not currently before the Court.[9]

---

[9] The Magistrate observed that "the defendant only needs to ask its dialer provider to provide the class records." (D.E. 29 at 7 (brackets and quotations omitted).) To the extent that observation can be characterized as an "order" for BSM to retrieve documents from a third party not named as a defendant in the lawsuit, BSM objects to such an order because that is not the law. "The Court ... cannot compel a party to provide information or produce documents that it does not have in its possession, custody, or control." *Tibbetts Lumber Co., LLC v. Amerisure Mutual Ins. Co.*, 2021 WL 1966492, *1 (M.D. Fla. May 17, 2021) (quoting *Thermoset Corp. v. Building Materials Corp. of Am.*, 2014 WL 6473232, *4-5 (S.D. Fla. Nov. 18, 2014)). BSM is under no obligation to locate documents outside its possession, custody, or control. *See, e.g., Benzion v. Vivint, Inc.*, 2013 WL 12304563, *3 (S.D. Fla. Sept. 20, 2013) (ruling on motion to compel in TCPA case: "Defendant's response shall be limited to those documents in its possession that are responsive to this request and it shall not be required to produce materials outside of its possession."). If Plaintiff desired documents beyond those in the control or possession of BSM, he could have issued a subpoena for those documents – and, in fact, he did. But there is no basis in the law to order BSM to produce documents not in its possession. *See, e.g., Grayson v. No Labels, Inc.*, 2021 WL 8199902, *5 (M.D. Fla. Dec. 29, 2021) (denying motion to compel on this basis); *Bodo v. GeoVera Specialty Ins. Co.*, 2018 WL 6019200, *2 (M.D. Fla. Nov. 16, 2018) (where defendant was "not in

### C. The Magistrate's Ruling on "Standing" for Purposes of Addressing the Consent Records Had Not Been Argued by the Parties and, in Any Event, Was Clearly Erroneous.

#### 1. Plaintiff Did Not Argue "Standing" as a Basis for Obtaining Consent Records.

In ordering the production of consent records, the Magistrate held that the Eleventh Circuit's opinion in *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019), justified production of the consent records because that case counsels courts to consider whether "putative class members have 'Article III standing.'" (D.E. 29 at 6 (quoting *Cordoba*, 942 F.3d at 1277).) The problem is that Plaintiff never based his motion on "Article III standing" and, therefore, the parties did not brief that issue as part of the Motion to Compel. In other words, the Magistrate reached out beyond the parties' briefs to decide the motion on an issue that Plaintiff did not argue as a basis for production.

The upshot is that the Magistrate ruled on an issue that had not been placed before the Court, which violates settled legal principles. *See Lloyd Noland Found., Inc. v. Tenet Healthcare Corp.*, 2007 WL 9717355, n.6 (N.D. Ala. Sept. 28, 2007)

---

possession, custody, or control of" requested documents, Court denied motion to compel, holding plaintiff "can request discovery from third parties, like the independent adjusters and vendors [defendant] hired," and if "those third parties fail to produce her requested discovery, [plaintiff] can move to compel that discovery"); *Siegmund v. Xuelian*, 2016 WL 1359595, *3 (S.D. Fla. Apr. 6, 2016) ("[T]he fact that a party could obtain a document if it tried hard enough...[or even] if it didn't try hard at all does not mean that the document is in its possession, custody, or control; in fact it means the opposite.") (sustaining objections and reversing magistrate order compelling production) (quotations omitted; brackets and ellipsis original).

("[T]he court will not rule on issues and arguments not before it."). The result of ruling on an issue not raised or briefed by the parties is an improper advisory opinion. *See, e.g.*, *In re Blue Cross Blue Shield Anti. Lit.*, 238 F. Supp. 3d 1313, n.10 (N.D. Ala. 2017) (holding that "on the current . . . record, this issue is not before the court, and the court declines to issue an advisory opinion with respect to it"). Because Plaintiffs did not raise *Cordoba* or "Article III standing" in the Motion to Compel, the Magistrate clearly erred in addressing, and ruling on, that issue for purposes of ordering production of the consent records. The Court should reverse the Magistrate on this basis alone.[10]

### 2. The Magistrate Misread and Misapplied *Cordoba* in Ordering Production of the Consent Records.

Even if the Court addresses the unbriefed standing issue the Magistrate unilaterally injected into the motion, it should reverse the Magistrate. Indeed, in holding that the "consent records . . . implicate[] standing, which a large portion of the class could lack if they gave consent to the calls (thereby precluding class certification)" (D.E. 29 at 9), the Magistrate misread and misapplied *Cordoba* to

---

[10] Another issue the Magistrate discussed without briefing from the parties concerned the holding that the information supposedly "will allow Plaintiff to identify those members associated with persons (who are included in the class) and those with businesses (who are excluded from the class)." (D.E. 29 at 7.) There is no such exclusion; the Complaint merely excludes from the proposed classes "Defendant and its employees or agents." (D.E. 1-2, ¶ 32.) In any event, a mere telephone number will not disclose whether the owner of the number is a business or a person, and Plaintiff has never made an argument otherwise. Therefore, the basis for the Magistrate's ruling, once again, is based on issues the parties never briefed or argued.

justify production of consent records.

The *Cordoba* plaintiff pursued a class action against the defendants for allegedly violating an FCC regulation requiring telemarketers to maintain lists of individuals who have asked not to receive calls from particular callers ("internal do-not-call lists"). The Eleventh Circuit vacated the district court's grant of class certification because the lower court failed to consider how, and whether, the standing of the putative class members affected the Rule 23(b)(3) predominance analysis. *See Cordoba*, 942 F.3d at 1274 ("The essential point, however, is that at some time in the course of the litigation the district court will have to determine whether each of the absent class members has standing before they could be granted any relief. That is an individualized issue, and it is one that the district court did not account for or consider in any way in deciding whether issues common to the class actually predominated over issues that were individualized to each class member.").

The *Cordoba* opinion did not concern consent, nor did it opine on production of "consent records"; the opinion simply held that district courts must assess standing as an individual issue during the course of determining whether to certify a class. And that is where the Magistrate erred here: standing has nothing to do with consent (and vice versa), and it was error to, in essence, combine the two issues in ruling on the Motion to Compel.

The sole Plaintiff, Bales, illustrates the Magistrate's error. He alleges that he

received calls that violated the FTSA in one or more ways; those allegations are sufficient to supply Article III standing, which is why BSM has not moved to dismiss for lack of standing. And *Cordoba* confirmed the settled law that, in the context of a proposed class action, "all that Article III requires for the claim to be justiciable is that a named plaintiff have standing." *Id.* at 1264. Therefore, there is no question that Plaintiff Bales has standing to sue under Article III based on the allegations in the Complaint.

Simply because Plaintiff has standing, however, does not mean that he is entitled to recovery or that BSM has no defenses to raise in response to his claim. And one of those defenses is consent. The proof will clearly show, based on Plaintiff's deposition, that he consented to receive the calls he has complained about in this case, and it is undisputed that BSM has produced those documents to Plaintiff. But the issue of consent is entirely separate from whether he has standing to sue in the first instance, and that is the problem with the Magistrate's ruling: it assumes that production of consent records will establish (or not) standing for putative class members. It won't; those persons either have standing or they don't based on the call records BSM has agreed to provide (and has, in fact, provided). If those individuals received a call that fits within Plaintiff's allegations and theory of the case, they should have Article III standing, but that is a completely different issue from whether those individuals consented to receive the call(s).

The Magistrate also seemingly confused (or ignored) the burdens of proof regarding consent. As noted above, while it is true that BSM bears the burden of proof of consent at trial, it is *Plaintiff's* burden to "advance a viable theory of generalized proof to identify those persons" who did not consent to receive the calls. *Gene & Gene*, 541 F.3d at 329. Producing consent records for every individual in a putative class is not "generalized proof" and it does not remotely serve the purpose of a class action; instead, it is requiring BSM to *dis*prove the claims of thousands of individuals during the discovery phase of the case. The Magistrate cited no post-*Cordoba* case that has imposed such an onerous burden on defendants – which, in itself, strongly suggests that the Magistrate clearly erred here.[11]

Just four months ago, Judge Merryday resolved any doubt as to the separate inquiries of standing and consent in this context: "Although the analysis of standing often overlaps with the analysis of the merits, in this instance the analyses remain distinct. In an action under the TCPA, *consent functions as an affirmative defense to liability and not 'as an issue of constitutional standing.'*" *Weister v. Vantage Point AI, LLC*, 2022 WL 3139373, *4 (M.D. Fla. Aug. 3, 2022) (emphasis added) (quoting *Reese v. Marketron Broad. Sols., Inc.*, 2018 WL 2117241, *2 (E.D. La. May 8, 2018)); *see also Romero v. Dept. Stores Nat'l Bank*, 725 Fed. Appx. 537, 539 (9th

---

[11] Oddly, the ruling notes, "Defendant and Plaintiff have not stated that other information has been provided which can establish the propriety of class certification." (D.E. 29 at 7.) A defendant is not under an obligation to provide "information" concerning "the propriety of class certification."

Cir. 2018) ("Disputes regarding whether [plaintiff] gave prior express consent to receive calls from the [defendants] or revoked that consent go to the merits of her TCPA claim, not to her standing."). Thus, courts treat standing and consent as separate issues. *See, e.g.*, *Beard v. John Hiester Chevrolet, LLC*, 2022 WL 16840332, **4-6 (E.D.N.C. Nov. 9, 2022) (analyzing standing to hold that plaintiff has Article III standing, then analyzing consent and granting summary judgment to defendant on basis that plaintiff provided prior express written consent); *Reese*, 2018 WL 2117241, **5-6 (holding plaintiff had Article III standing, then granting motion to dismiss where plaintiff provided express written consent to receive texts).[12]

Had Plaintiff advanced the "standing" argument in his motion, BSM would have cited these cases (among others) to the Magistrate to demonstrate why "consent records" are irrelevant to the standing analysis and cannot justify granting a motion to compel production of "consent records." The Magistrate plainly erred in conflating standing and consent in ordering production of the "consent records."

### 3. Even If the Court Considers the Unbriefed Standing Issues, It Should Sustain BSM's Objections and Reverse the Order Compelling Production of Consent Records.

Even if the Court were to consider the standing/consent issue upon which the

---

[12] *See also Oliver v. TTC-Ameridial, LLC*, 2018 WL 1255017, *4 (N.D. Ill. Mar. 12, 2018) ("Were courts to treat the TCPA consent defense as implicating standing, then virtually every case in which a defendant claimed that a plaintiff consented to calls would generate a Rule 12(b)(1) motion and, possibly, an evidentiary hearing that would be indistinguishable from a trial on the merits. The Court does not think it appropriate to import an affirmative defense into a threshold determination of standing.").

Magistrate based the order compelling production of consent records despite not receiving briefing on that subject, from any party, the Court should reverse that order. There is no basis to compel such a voluminous production.

Squarely on point is *Nece v. Quicken Loans, Inc.*, 2018 WL 1072052, *1 (M.D. Fla. Feb. 27, 2018), a proposed TCPA class action where the plaintiff sought, and the Magistrate ordered, production of "[a]ll consumer and/or customer communications of any type or kind, or records of communications, received by Defendant revoking consent for Defendant or any third party to contact that consumer or customer." Sustaining the defendant's objections and reversing the Magistrate, the Court held that "[f]or too long, [plaintiff] has avoided confronting the reality that individualized issues often predominate in putative TCPA class actions involving a dispute about consent or the revocation of consent." *Id.*, *3 (citing *Gene & Gene*). The Court added that plaintiff's requests "impose on [defendant] a burden disproportional to the needs of this action," adding that "[s]ustaining [defendant'] objection obviates the need for a lengthy extension of discovery." *Id.*[13]

---

[13] BSM argued – and maintains the argument – that the lateness of Plaintiff's motion (filed seven months after receiving BSM's objections and responses) and the Magistrate's order (issued 30 days after discovery closed on October 28) will undeniably require a discovery extension. The Magistrate, it seems, erroneously interpreted that argument as a request by BSM to extend discovery. (*See* D.E. 29 at 9 ("[T]o the extent that Defendant argues granting this motion to compel necessitates an extension of the discovery deadline for it to re-depose Plaintiff's expert, it appears this argument and request is [sic] premature, and is denied without prejudice.").) To be clear, BSM is *not* requesting any extension of discovery; to the contrary, the Magistrate's erroneous ruling has,

In short, there simply no basis for the Magistrate to order BSM to produce documents regarding consent for each of the thousands of unnamed persons Plaintiffs purports to represent here. By making such an erroneous ruling, the Magistrate transformed the case from a proposed class action into thousands of fact-based individual cases – which, of course, is the very antithesis of a class action. The fact that the Magistrate took such a drastic step demonstrates what should, by now, be obvious – this case is, and will always be, inappropriate for class certification. The Court should reverse the Magistrate's erroneous ruling granting Plaintiff's Motion to Compel as to RFPD #24.

## CONCLUSION

BSM respectfully requests that the Court reverse the Magistrate's ruling concerning the production of "consent records" (D.E. 29) for the reasons stated.

DATED:     December 13, 2022.


                                        /s/ *Irene Oria*
                                        Irene Oria (FL Bar No. 484570)
                                        Barry Goheen (*pro hac vice*)
                                        **FisherBroyles, LLP**
                                        199 E. Flagler St. #550
                                        Miami, FL 33131
                                        Tel.: (305) 536-2838
                                        Facsimile: (305) 536-2838

---

as of this date, had the effect of extending discovery by 45 days, hampering BSM's ability to meet the summary judgment motion deadline of January 20, 2023 (D.E. 15 at 1) – a mere five weeks from the date of this appeal/objections. BSM *objects*, not *moves*, for any extension of discovery, and the Magistrate committed additional error in misconstruing BSM's position.

Email: irene.oria@fisherbroyles.com
Email: barry.goheen@fisherbroyles.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

This is to certify that I have this 13th day of December, 2022, electronically

served the foregoing on all counsel of record.

/s/ Irene Oria
Irene Oria, Esq.

## SERVICE LIST

Avi R. Kaufman
kaufman@kaufmanpa.com
Rachel E. Kaufman
rachel@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

Stefan Coleman
law@stefancoleman.com
LAW OFFICES OF
STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

*Counsel for Plaintiff*