UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**FLOYD STEVE BALES,**

    **Plaintiff,**

**v.**                                                   **Case No: 5:21-cv-496-MMH-PRL**

**BRIGHT SOLAR MARKETING LLC,**

    **Defendant.**

### REPORT AND RECOMMENDATION[1]

Plaintiff filed this action under the Florida Telephone Solicitation Act (FTSA), Fla. Stat. § 501.059, and the Florida Telemarketing Act (FTMA), Fla. Stat. § 501.616, against Defendant, Bright Solar Marketing LLC. The defendant, who prevailed on summary judgment (Docs. 47 & 59), now seeks a determination of entitlement to its attorney's fees and costs under the FTSA. (Doc. 61); Fla. Stat. § 501.059(11). It also seeks to tax its costs under 28 U.S.C. § 1920. (Docs. 69 & 70). In response to the motions, Plaintiff argues, *inter alia*, that the FTSA attorney's fee provision is inapplicable here and that certain costs are not taxable under § 1920. (Docs. 63, 68, & 72). Defendant has filed a reply. (Doc. 67). For the reasons discussed below, I submit that Defendant is not entitled to attorney's fees because the statute does not provide for them in this case and that the costs should be partially reduced.

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

I.   ATTORNEY'S FEES AND COSTS UNDER THE FTSA

Under the FTSA, "[i]n any civil litigation **resulting from a transaction** involving a violation of this section, the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, shall receive his or her reasonable attorney's fees and costs from the nonprevailing party." Fla. Stat. § 501.059(11) (2023) (emphasis added).

Here, Plaintiff argues that Defendant is unentitled to attorney's fees under the FTSA because this action neither results from nor involves a "transaction[,]" as interpreted by *Abbott v. Advantage Travel, LC*, No. 6:14–cv–172–Orl–31GJK, 2014 WL 12618812, at *2 (M.D. Fla. May 12, 2014) ("Although not a defined term, it is clear from a review of the statute that 'transaction' in this context is intended to mean an exchange of money for goods or services, rather than a mere interaction—such as an unsolicited phone call"). In response, Defendant argues that *Abbott*'s definition of "transaction" is too restrictive and inapplicable following the FTSA's amendment in 2021. Instead, Defendant defines "transaction" as "to carry out or conduct (business or affairs)" and argues that it includes scheduling a business appointment. *Williams v. Salt Springs Resort Ass'n, Inc.*, 298 So. 3d 1255, 1259 (Fla. 5th DCA 2020).

As an initial matter, even if the FTSA's definition of "transaction" was as broad as Defendant argues, Defendant was a prevailing party because the Court found that Plaintiff had abandoned his claims based on the three calls alleged in the complaint. (Doc. 59 at 14–15). Specifically, while Plaintiff's claims allegedly arose from him being called three times by Defendant, it was shown that Plaintiff had placed the calls. *Id.* at 11, 14–21. Hence, Defendant was a prevailing party by virtue of Plaintiff calling it, rather than Plaintiff making and cancelling an appointment with it. Further, whether an appointment alone would be a

"transaction" under FTSA seems dubious given the use of that term in other parts of the statute.

As this Court correctly observed in *Abbott*, the FTSA "regulates not only telephone solicitations, but transactions resulting from such solicitations." *Abbott*, 2014 WL 12618812, at *2. It sets forth the law governing telephone solicitations (when it is allowed or disallowed and by what means) and it establishes conditions that must be satisfied where the solicitation results in a transaction. When *Abbott* was decided, the FTSA only provided for civil actions initiated by "the Florida Department of Agriculture and Consumer Services and the Florida Department of Legal Affairs." *Id.* at *1. If these entities brought an FTSA action, attorney's fees were available to the prevailing party in **two** circumstances. *Id.* at *3 ("[T]he two different methods of recovering attorneys' fees involve different claims, not different claimants"). First, attorney's fees were available in "litigation 'resulting from a *transaction* involving a violation of'" the FTSA. *Id.* (citing § 501.059(10)(a) (2014)). Second, attorney's fees were available in "'**any civil litigation**' . . . . where there is no justiciable issue of law or fact or the . . . other party acted in bad faith." *Abbott*, 2014 WL 12618812, at *2 (emphasis added) (citing § 501.959(10)(e) (2014)).

In 2021, the FTSA was amended to create a private right of action for "[a] called party[.]" Fla. Stat. § 501.059(10)(a) (2023);[2] *see* Fla. Stat. § 501.059 note (2021) (Editor's and Revisor's notes) ("inserted a new subsec. (10), relating to actions"). Now, either "[a] called party," or the Florida Department of Agriculture and Consumer Services or the Department of Legal Affairs may bring an action. *See* Fla. Stats. § 501.059(10)(a) & § 501.059(9)(a) (2023).

---

[2] "A called party who is aggrieved by a violation of this section may bring an action to: 1. Enjoin such violation. 2. Recover actual damages or $500, whichever is greater." Fla. Stat. § 501.059(10)(a) (2023).

The attorney's fee provisions were "simply ke[pt]" and renumbered to § 501.059(11)(a) and (e). S.B. 1120, 2021 Leg., Reg. Sess. (Fla. Apr. 22, 2021) (statement of Sen. Gibson), https://thefloridachannel.org/videos/4-22-21-senate-session-part-2/ ("this amendment simply keeps statutory language on attorney's fees for the injured party"). Indeed, in actions initiated by the Florida Department of Agriculture and Consumer Services or the Department of Legal Affairs, attorney's fees were available in the same two circumstances as before the 2021 amendment. Fla. Stat. §§ 501.059(11)(a) & (e).

However, after the 2021 amendment, when "[a] called party" initiates an action under the FTSA, attorney's fees are only available when the litigation results from a transaction. Fla. Stat. § 501.059(11)(a). Indeed, the broader attorney's fees provision lacking the "transaction" language was limited to actions initiated by the Florida Department of Agriculture and Consumer Services or the Department of Legal Affairs. Fla. Stat. § 501.059(11)(e).[3] This provision is broader because it lacks the "transaction" language, and thus arguably covers all claims under the act (including those not resulting from a transaction and only involving a called party). However, because this action was not initiated by the State, attorney's fees are unavailable under this broader provision that does not require a transaction.

Regardless of whether there is a transaction, there is a remedy for a violation of the FTSA, enforceable by the State or a called party. But while adding a private right of action for telephone solicitations not involving a transaction, the legislature rejected an expansion of the attorney's fee provision to this same extent. Indeed, the legislature explicitly rejected an

---

[3] "In any civil litigation initiated by the department or the Department of Legal Affairs, the court may award to the prevailing party reasonable attorney's fees and costs if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party or if the court finds bad faith on the part of the losing party." Fla. Stat. § 501.059(11)(e).

amendment that would have permitted a prevailing plaintiff, in an action **not** involving a transaction (or the Florida Department of Agriculture and Consumer Services or the Department of Legal Affairs), to recover attorney's fees. *See* S.B. 1120, 2021 Leg., Reg. Sess. (Fla. 2021).[4] Under this rejected amendment, however, Defendant would still have been unable to recover attorney's fees (as it would have only applied to a prevailing plaintiff).

In Florida, courts can consider legislative history in statutory interpretation to confirm the statute's clear and plain meaning. *Hawkins v. Ford Motor Co.*, 748 So. 2d 993, 1000 (Fla. 1999) (using legislative history to confirm statute's plain meaning). Here, the FTSA's legislative history confirms its clear and plain meaning in using the term "transaction," in alignment with *Abbott*. *Abbott v. Advantage Travel, LC*, No. 6:14–cv–172–Orl–31GJK, 2014 WL 12618812, at *2 (M.D. Fla. May 12, 2014) ("an exchange of money for goods or services, rather than a mere interaction—such as an unsolicited phone call"). When *Abbott* was decided in 2014, it dealt with the same FTSA attorney's fee provision as the instant one. There, the court noted that other provisions of the FTSA confirmed the meaning of "transaction," and such provisions remain after its amendment in 2021. *Abbott*, 2014 WL 12618812, at *2.

Furthermore, in the FTSA the word "transaction" is used four times, including in the attorney's fees provision. These additional uses of the term "transaction" support *Abbott*'s interpretation, as they relate to *inter alia*, contracts and sales made by telephone. First, "transaction" is used in subsection 6(b), which lists requirements for "[a] contract made

---

[4] Specifically, the proposed amendment provided:

(11)(a) If a plaintiff prevails in any civil litigation resulting from a ~~transaction involving a~~ violation of this section~~, the prevailing party~~, after judgment in the trial court and exhaustion of all appeals, if any, the plaintiff shall receive his or her reasonable attorney ~~attorney's~~ fees and costs from the defendant ~~nonprevailing party~~.

S.B. 1120, 2021 Leg., Reg. Sess. (Fla. 2021).

pursuant to a telephonic sales call" including that there is "in bold, conspicuous type . . . the . . . statement: 'You are not obligated **to pay any money** unless you sign this contract and return it to the seller.'" Fla. Stat. § 501.059(6)(b)(5) (emphasis added). Notably, that contract "[m]ay not exclude from its terms any oral or written representations made by the telephone solicitor to the consumer in connection with the transaction." Fla. Stat. § 501.059(6)(b)(6).[5]

Second, "transaction" is used in subsection (7)(b), which again supports the interpretation that it involves money in exchange for goods or services. Fla. Stat. § 501.059(7)(b). Specifically, the subsection states that "[a] merchant who conducts a credit card account transaction pursuant to this section shall be subject to the provisions of s. 817.62." Fla. Stat. § 501.059(7)(b) (citing Fla. Stat. § 817.62 ("Fraud by person authorized to provide goods or services.")).

Third, further confirming *Abbott*'s interpretation is that the FTSA provides when subsection (7) does not apply to a transaction. Fla. Stat. § 501.059(7). Notably, when stating the inapplicability of the subsection, the FTSA explicitly describes transactions: (1) "[m]ade in accordance with **prior negotiations** in the course of a visit by the **consumer to a merchant** operating a retail business establishment . . . where consumer goods are displayed or offered for sale on a continuing basis;" (2) where "the consumer **may obtain a full refund** for the return of undamaged and unused goods or **cancellation** of **services** . . .;" (3) where "the

---

[5] Importantly, under (7)(a):

A merchant who engages a telephone solicitor to make or cause to be made a telephonic sales call shall not make or submit any charge to the consumer's credit card account or make or cause to be made any electronic transfer of **funds until after the merchant receives from the consumer a copy of the contract, signed by the purchaser**, which complies with this section.

Fla. Stat. § 501.059(7)(a) (emphasis added).

consumer **purchases goods or services** pursuant to an examination of a television, radio, or print advertisement . . . ; or" (4) where "the **merchant** is a bona fide charitable organization or a newspaper[.]"   Fla. Stat. § 501.059(7)(c) (emphasis added). Hence, the provisions of § 501.059 remain consistent with *Abbott*'s interpretation of "transaction."

Finally, the defendant fails to cite to any authority that supports its definition of "transaction" and contradicts *Abbott*'s or the plain reading of the statute. While Defendant cites to *Williams* for its definition of transaction, that case supplies the opposite conclusion from the definition that Defendant proposes. *Williams v. Salt Springs Resort Ass'n, Inc.*, 298 So. 3d 1255, 1259 (Fla. 5th DCA 2020). There, the court defined "'transaction' . . . as 'something transacted' . . . . [and] 'transact' . . . as 'to carry out or conduct (business or affairs).'" *Id.* The court held that "[t]he **purchase** of a condominium is unquestionably a property **transaction**." *Id.* at 1259-60 (emphasis added). Hence, *Williams* expressly dealt with an exchange of money for a property, in line with the definition of transaction as an exchange of money for goods or services.

Also, Defendant argues that supporting its definition are two Middle District cases that denied attorney's fees without mentioning the lack of a "transaction." (Doc. 61 at 9-10) (first citing *Brown v. Care Front Funding*, 8:22-CV-2408-VMC-JSS, 2023 WL 3098355, at *1 (M.D. Fla. Apr. 6, 2023), *report and recommendation adopted*, 2023 WL 3092617 (M.D. Fla. Apr. 26, 2023); then citing *Carraha v. Weston Med Spa & Cosm. Surgery, LLC*, 6:22-CV-1755-WWB-EJK, 2023 WL 1765646 (M.D. Fla. Feb. 3, 2023)). However, in *Brown*, as Defendant represents, the court did not get to the issue of the word "transaction" because it found there was no "FTSA violation in the first instance." (Doc. 61 at 9) (citing *Brown*, 2023 WL 3098355, at *6). Likewise, in *Carraha*, the issue before the court was one of ethics, rather than the

definition of "transaction." *Carraha*, 2023 WL 1765646 at *1. As Defendant argued in its motion to stay "the court will not rule on issues and arguments not before it." (Doc. 30 at 5) (citing *Lloyd Noland Found., Inc. v. Tenet Healthcare Corp.*, No. CV-01-BE-0437-S, 2007 WL 9717355, at *7 n.6 (N.D. Ala. Sept. 28, 2007)).

As the plaintiff argues, Defendant's definition of "transaction" would render the term superfluous in the FTSA's attorney's fee provision. As discussed above, the FTSA uses the term "transaction" a total of four times, in meaningful connection with its provisions. To ignore the term "transaction" in the FTSA attorney's fee provision would be inconsistent with the other provisions implicating the word "transaction." Moreover, it would expand the attorney's fee provision beyond what the legislature expressly contemplated. Ultimately, Defendant's interpretation of the FTSA would require the Court to completely ignore the phrase "resulting from a transaction" in the attorney's fee provision, in direct contradiction of its express language.

Accordingly, I submit that Defendant's motion for entitlement to attorney's fees and costs under the FTSA (Doc. 61), should be **denied**.

## II.    COSTS UNDER 28 U.S.C. § 1920

Next, Defendant seeks to tax costs, including mediation fees, under 28 U.S.C. § 1920.

### A. Legal Standards

Under Federal Rule of Civil Procedure 54(d), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Title 28 U.S.C. § 1920 defines the costs taxable under Rule 54(d). *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987). Section 1920 authorizes the taxing of:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

The party seeking an award of costs bears the initial burden of submitting a request that enables a court to determine what costs were incurred by the party and in what amounts. *Loranger v. Stierheim*, 10 F.3d 776, 784 (11th Cir. 1994). Once this showing is made, it is the losing party that bears the burden to demonstrate that the costs are not taxable. *Ass'n for Disabled Ams., Inc. v. Integra Resort Mgmt., Inc.*, 385 F. Supp. 2d 1272, 1288 (M.D. Fla. 2005). The losing party can meet its burden by providing "some rationale under which the court should not allow costs." *Geisler v. FedEx Ground Packaging Sys., Inc.*, No. 3:12-cv-1189, 2017 WL 4404442, at *3 (M.D. Fla. Aug. 28, 2017). If the court wishes to deny costs specifically authorized by § 1920, it must have a "sound basis" for declining to tax the costs. *See Chapman v. AI Transport*, 229 F.3d 1012, 1039 (11th Cir. 2000). However, "the word 'should' [in Rule 54] makes clear that the decision whether to award costs ultimately lies within the sound discretion of the district court." *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 377 (2013).

### B. Discussion

As an initial matter, Defendant is entitled to recover costs by virtue of prevailing on Plaintiff's FTSA and FTMA claims. Fed. R. Civ. P. 54(d). Defendant seeks a total of

$15,337.84 in costs, including $7,500.00 for mediation fees,[6] $402.00 for the fees of the Clerk, $120.00 for service of summons and subpoena, and $7,315.84 in transcript and deposition fees. (Docs. 61 & 69).

### 1. Mediation Costs

To begin with the largest individual cost, Plaintiff objects to the $7,500.00 in fees for the mediation mandated by the Court's Order. (Doc. 15). Here, Defendant argues that under Florida law, when the parties are required to mediate by court order, mediation fees are a taxable cost. However, "the majority of courts have held that an award of costs in a diversity case is governed not by state law, but by federal law." *TIG Ins. v. United Nat'l Ins.*, No. 05-60672-CIV, 2007 WL 9698303, at *14 (S.D. Fla. Feb. 26, 2007), *report and recommendation adopted*, 2007 WL 9698259 (S.D. Fla. Mar. 19, 2007), *aff'd* 280 F. App'x 831 (11th Cir. 2008). Hence, I submit that Defendant may only recover costs that are taxable under 28 U.S.C. § 1920.[7]

Under § 1920, mediation fees are not a taxable cost. (Doc. 63 at 10) ("Defendant is entitled only to the costs provided for under 28 U.S.C. § 1920"); *Nicholas v. Allianceone Receivables Mgmt., Inc.*, 450 F. App'x 887, 888 (11th Cir. 2012) (prevailing party "not entitled to mediation fees because those costs are not taxable under 28 U.S.C. § 1920"); *see Van Voorhis v. Hillsborough Bd. of Cnty. Com'rs*, 8:06-cv-1171-T-TBM, 2008 WL 2790244, at *4 (M.D. Fla.

---

[6] Defendant seeks mediation fees in its motion for entitlement to attorney's fees and costs. (Doc. 61).

[7] While the FTSA provides for the recovery of costs in its attorney's fee provision, I do not address Defendant's entitlement to costs under that statute, because I submit that this case does not involve a "transaction." Fla. Stat. § 501.059(11).

July 18, 2008) ("Of the circuits that have squarely addressed whether mediation costs may be taxable under § 1920, all have held that they are not").[8]

Accordingly, I submit that Defendant's request to tax $7,500 in mediation fees should be **denied**.

### 2. Transcript and Deposition Costs

Second, Plaintiff objects to $7,315.84 in transcript and deposition fees that Defendant seeks to tax.[9] Specifically, Plaintiff objects to costs associated with these depositions for shipping, handling, and delivery of transcripts; rough draft, condensed, and digital transcripts; processing and compliance; remote video streams; e-bundles and litigation packages; and CD-ROM exhibits. Plaintiff argues that some costs are unrecoverable under § 1920 and that Defendant has not shown that the costs were necessarily incurred to permit their taxation.

### a. Shipping, Handling, and Processing and Compliance Costs

First, for each deposition, Plaintiff objects to costs associated with the shipping of the transcripts.[10] Plaintiff also objects to $100.00 in "processing and compliance" costs associated with Wysong and Fortenberry's deposition transcripts. In *Watson v. Lake County*, the Eleventh Circuit held that "§ 1920 does not authorize recovery of costs for shipment of depositions[.]" *Watson v. Lake Cnty.*, 492 F. App'x 991, 997 (11th Cir. 2012) (per curiam) (unpublished table decision) (citing *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996)). However, since

---

[8] "Unless the parties and the mediator agree otherwise, the parties . . . must **bear equally** the **cost of mediation**." M.D. Fla. Local Rule 4.02(d) (emphasis added).

[9] $7,315.84 = $2,187.95 (Plaintiff's deposition) + $2,005.60 (Randall Snyder's deposition) + $2,022.10 (Aaron Woolfson's deposition) + $1,100.19 (depositions of Defendant's corporate representatives, Steven Wysong and Weldon Fortenberry III).

[10] Specifically: $28.00 for hosting and delivery of encrypted files for Plaintiff's deposition transcript; $35.00 for Federal Express/UPS delivery of Snyder's deposition transcript; $19.39 for shipping Wysong's and Fortenberry's deposition transcripts; and $55.00 for shipping and handling Woolfson's deposition transcript.

*Watson*, the Eleventh Circuit has opined that postage, shipping, handling, and processing and compliance charges "are not categorically outside the bounds of" § 1920. *See In re Fundamental Long Term Care, Inc.*, 753 F. App'x 878, 885 & n.4 (11th Cir. 2019).

Most courts in the Eleventh Circuit appear to reconcile these cases by allowing the taxation of shipping and handling costs where they are shown to be necessarily incurred, rather than for the convenience of counsel. *Birren v. Royal Caribbean Cruises Ltd.*, No. 1:20-CV-22783-BLOOM/Louis, 2023 WL 319136, at *5 (S.D. Fla. Jan. 3, 2023), *report and recommendation adopted*, 2023 WL 315793 (S.D. Fla. Jan. 19, 2023) ("shipping and handling, expedited delivery of transcripts, exhibit costs, or condensed transcripts, are not taxable because generally, they are incurred for convenience of counsel, as opposed to being necessarily obtained for use in the case"); *Baer's Furniture Co. v. Comcast Cable Commc'ns Mgmt. LLC*, No. 20-61815-CIV, 2023 WL 1781818, at *3 (S.D. Fla. Jan. 17, 2023), *report and recommendation adopted,* No. 20-61815-CIV, 2023 WL 1778551 (S.D. Fla. Feb. 6, 2023) (awarding shipping and handling costs that were "included as part of the 'fees' associated with the transcript"); *see also Feise v. N. Broward Hosp. Dist.*, No. 14-CV-61556, 2017 WL 3315144, at *3 (S.D. Fla. Aug. 3, 2017) ("there is a split in this circuit regarding the taxability of transcript postage, handling, and shipping expenses") (first citing *Suarez v. Tremont Towing, Inc.*, No. 07-21420-CIV, 2008 WL 2955123, at *3 (S.D. Fla. Aug. 1, 2008); then citing *Univ. of Miami v. Intuitive Surgical, Inc.*, No. 04-20409-CIV, 2007 WL 781912, at *1 n.4 (S.D. Fla. Mar. 13, 2007)).

Here, Defendant represents that the shipping costs for each of the deposition transcripts was a necessary cost for it to receive copies of the transcripts. (Doc. 70 at 10). Defendant represents that the court reporting companies mandate the charge, rather than it

being optional. Likewise, Defendant cites to cases finding that processing and compliance charges "are part of the court reporter's fees and are taxable." *Garcia-Celestino v. Consol. Citrus Ltd. P'ship*, No. 2:10 C 542 - MEA, 2019 WL 12536004, at *5 (M.D. Fla. May 10, 2019) (quoting *Ferguson v. Bombardier Servs. Corp.*, 2007 WL 601921, at *4 (M.D. Fla. Feb. 21, 2007)). Hence, the defendant necessarily incurred shipping and processing costs to receive copies of the deposition transcripts, rather than for the convenience of counsel.

Accordingly, I recommend that Plaintiff's objections to the shipping, handling, delivery, and processing and compliance charges be overruled.

### b. Rough Draft Transcripts

Next, Plaintiff objects to the costs of rough draft transcripts associated with his deposition ($382.20), Snyder's deposition ($338.00), and Woolfson's deposition ($344.10). The costs of rough draft transcripts are taxable if the party seeking to tax such costs shows that they are necessary. *See In re Fundamental Long Term Care, Inc.*, 753 F. App'x 878, 885 & n.4 (11th Cir. 2019) ("charges for . . . rough drafts" "are not categorically outside the bounds of" § 1920).

Here, Defendant argues that rough draft transcript costs were necessary for it to prepare for and participate in Court-ordered mediation, that was conducted three weeks after the depositions of Snyder and Woolfson took place. The depositions of Snyder and Woolfon were rescheduled due to Hurricane Ian and took place three days before the deposition of Defendant's corporate representatives (Wysong and Fortenberry). (Doc. 70 at 4–5). Defendant represents that Snyder and Woolfson's rough draft transcripts were also necessary to prepare for the depositions of its corporate representatives. Additionally, Defendant contends that the rough draft of Plaintiff's deposition transcript was necessary because the

plaintiff did not present himself for deposition until the last day of the year-long discovery period. (Doc. 70 at 4–5).

While a hurricane, rather than the plaintiff, delayed the depositions of Snyder and Woolfson, it appears that these costs were necessary given the tight timeline between the depositions and mediation. *See Core Constr. Servs. Se., Inc. v. Crum & Forster Specialty Ins.*, No. 6:14–cv–1790–Orl–31KRS, 2016 WL 1554349, at *3 (M.D. Fla. Mar. 21, 2016), *report and recommendation adopted,* No. 6:14–cv–1790–Orl–31KRS, 2016 WL 1546491 (M.D. Fla. Apr. 15, 2016) ("Courts have found that costs of expedited preparation of deposition transcripts are taxable when, as here, the opposing party delayed in producing the deponent and the transcript was needed for use at mediation") (citing *Frasca v. NCL (Bah.) Ltd.*, No. 12-20662-COV, 2014 WL 4206697, at *6 (S.D. Fla. Aug. 25, 2014)); *Cates v. Zeltiq Aesthetics, Inc.*, No. 6:19-CV-1670-PGB-LRH, 2021 WL 8200215, at *4 (M.D. Fla. Dec. 27, 2021), *report and recommendation adopted*, No. 6:19-CV-1670-PGB-LRH, 2022 WL 20123591 (M.D. Fla. Jan. 11, 2022) (awarding costs of expedited and rough transcripts where defendant represented that standard delivery times for transcripts would leave it with insufficient time to prepare *Daubert* motions). Hence, it appears that Plaintiff's objections to the rough draft deposition costs for Snyder and Woolfson are due to be overruled.

However, to the extent Plaintiff objects to his own rough draft transcript cost, although he was deposed on the last day of the discovery period, Defendant fails to provide a reason for the necessity of the transcript. Indeed, Plaintiff's deposition occurred on October 28th, ten days after the October 18th mediation, so his rough draft transcript could not have been used for mediation. Further, the deposition occurred on October 28, 2022, and Defendant's motion for summary judgment was not filed until February 21, 2023, so a rough draft transcript does

not appear necessary to comply with a tight deadline. *Cf. Core Constr. Servs. Se., Inc.*, 2016 WL 1554349, at *3. Hence, it appears that a rough draft transcript of Plaintiff's deposition was for the convenience of counsel, rather than a necessary expense. Thus, it appears that Defendant's request to tax $382.20 in costs for a rough draft transcript of Plaintiff's deposition is due to be denied.

Accordingly, I recommend that the Court **overrule** Plaintiff's objections to the taxation of costs for rough draft transcripts of Woolfson's and Snyder's depositions and **deny** Defendant's request to tax $382.20 for a rough draft transcript of Plaintiff's deposition.

c. **Condensed and Digital Transcripts**

Next, Plaintiff objects to costs associated with the depositions of Fortenberry and Wysong—$50.00 for condensed transcripts and $100.00 for digital transcripts. As with rough transcripts, the Court will award the costs of condensed and digital transcripts where the party seeking to tax them shows they are necessary. *Birren*, 2023 WL 319316, at *5 ("condensed transcripts . . . are not taxable because generally, they are incurred for convenience of counsel, as opposed to being necessarily obtained for use in the case"); *Dowler v. GEICO Gen. Ins.*, No. 8:20-CV-2530-VMC-AAS, 2022 WL 1224103, at *4 (M.D. Fla. Feb. 2, 2022), *report and recommendation adopted*, 2022 WL 2306848 (M.D. Fla. Feb. 22, 2022) (denying award of costs for condensed and digital transcripts because they were not shown to be necessary); *see Watson v. Lake Cnty.*, 492 F. App'x 991, 997 (11th Cir. 2012).

While Defendant argues that the costs of "rough drafts of" Wysong and Fortenberry's depositions were necessary to prepare for and participate in Court-ordered mediation, (Doc. 70 at 5), there are no rough draft transcript charges for these depositions. (Doc. 69 at 12). Instead, there is a "condensed transcript" and "digital transcript" for each deposition of

Wysong and Fortenberry. (Doc. 69 at 12). It is unclear which transcript(s) of the four, if any, Defendant refers to as "rough draft transcripts." As a result, it is unclear whether the digital transcript costs were necessarily incurred or whether the condensed transcript costs were necessarily incurred (or whether both were necessarily incurred). Hence, it appears that the costs for condensed transcripts digital transcripts of Wysong and Fortenberry's depositions were incurred for the convenience of counsel and are non-taxable.

Accordingly, I recommend that the Court reduce Defendant's bill of costs by $150.00.[11]

### d. Remote Video Stream Costs

Next, Plaintiff objects to $150.00 in costs for a remote video stream associated with Aaron Woolfson's deposition.

Generally, video deposition costs may be taxed under § 1920(2) if the party noticed the deposition to be recorded, no objection was raised at that time by the other party to the method of recording, and the video was necessarily obtained for use in the case. *See Morrison v. Reichhold Chems. Inc.,* 97 F.3d 460, 464-65 (11th Cir. 1996); *see also Watson v. Lake Cnty.*, 492 F. App'x 991, 997 (11th Cir. 2012); *see also Siemens Energy, Inc. v. MidAmerica C2L Inc.*, 2020 WL 10457660, at *4 (M.D. Fla. June 19, 2020), *report and recommendation adopted*, 2020 WL 10457659 (M.D. Fla. July 6, 2020) (video deposition costs were taxed where no objection was made to the method of recording and where a showing was made for necessity, including that the witnesses were outside the subpoena power of the court); *Strong v. GEICO Gen. Ins.*, 2018 WL 671342, at *2 (M.D. Fla. Jan. 10, 2018), *report and recommendation adopted*, 2018 WL 647457 (M.D. Fla. Jan. 31, 2018) (video depositions costs were not taxed where no showing was made as to how the video deposition was noticed, whether there was an objection, or

---

[11] $150.00 = $50.00 (two condensed transcripts) + $100.00 (two digital transcripts).

whether it was necessary for use in the case). Here, although Plaintiff objects to this cost, he does not represent that the deposition was noticed to occur in-person, rather than remotely, or that he objected to the deposition as noticed. Moreover, Defendant's counsel provides an email showing that Plaintiff's counsel was noticed as to the deposition taking place on Zoom (the video-conferencing platform). (Doc. 70-2 at 7).

Accordingly, I submit that the Court should overrule Plaintiff's objection to the $150.00 cost of the remote video stream associated with Woolfson's deposition.

### e.  E-Bundle, Litigation Package, and Exhibit Costs

Finally, Plaintiff objects to $53.00 in costs for the "litigation package" associated with his deposition, $30.00 in costs for an "e-bundle" associated with Snyder's deposition, and $70.00 in costs for two CD-ROM exhibits associated with Wysong's and Fortenberry's depositions. Although Defendant was aware of Plaintiff's objections that these are non-taxable and incurred for the convenience of counsel, it does not argue that these costs were necessarily incurred. *See Dowler*, 2022 WL 1224103, at *4 (awarding exhibits costs where shown as necessary); *Am. Guarantee & Liab. Ins. v. U.S. Fid. & Guar. Co.*, No. 4:06CV655RWS, 2010 WL 1935998, at *6 (E.D. Mo. May 10, 2010); *Birren*, 2023 WL 319316, at *5 ("exhibit costs. . . are not taxable because generally, they are incurred for convenience of counsel, as opposed to being necessarily obtained for use in the case"). Notably, in the Eleventh Circuit, "exhibit costs are not taxable because there is no statutory authorization." *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 623 (11th Cir. 2000). Moreover, e-bundle and litigation packages are non-taxable, particularly when a party seeking to tax these costs fails to show that they were necessarily incurred. *Matamoros v. Broward Sheriff's Off.*, No. 18-CV-62813, 2022 WL 484828, at *4 (S.D. Fla. Jan. 31, 2022), *report and recommendation adopted,* No. 18-62813-CIV,

- 17 -

2022 WL 479883 (S.D. Fla. Feb. 16, 2022) (Costs for litigation support packages "are usually not taxable because they are incurred for the convenience of counsel"); *Chase Bank USA, N.A. v. Jacucci*, No. 19-62318-CIV, 2021 WL 2689961, at *1 (S.D. Fla. Apr. 6, 2021) ("copies of exhibits to the deposition, the litigation support package, and electronic processing and delivery are not recoverable") (citations omitted). Here, Defendant fails to argue that the litigation package, e-bundle, and CD-ROM exhibit costs were necessarily incurred. Instead, it appears that these costs were incurred for the convenience of counsel.

Accordingly, I recommend that the Court reduce Defendant's bill of costs by $153.00.[12]

For the above stated reasons, I recommend that the Court reduce Defendant's bill of costs by $685.20 to $7,152.64.[13] Further, I submit that Defendant cannot tax $7,500 in mediation costs.

### III.   RECOMMENDATION

Accordingly, for the reasons stated above, I recommend that Defendant's motion for entitlement to attorney's fees and costs under the FTSA be **denied**. Further, I recommend that Defendant's motion to tax costs under § 1920 be granted to the extent that Defendant is awarded $7,152.64 in costs.

Recommended in Ocala, Florida on August 15, 2023.

PHILIP R. LAMMENS
United States Magistrate Judge

---

[12] $153.00 = $53.00 (litigation package) + $30.00 (e-bundle) + $70.00 (two CD-ROM Exhibits).

[13] $7,152.64 = $7,837.84 - $685.20. $685.20 = $153.00 + $150.00 + $382.20.

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy